IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| WILLIAM HARRISON and CATHEXIS HOLDINGS, LP, | ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) ) |
| STEVE JAMES FORDE, | ) ) ) |
| *Defendant.* | ) ) ) |

CIVIL ACTION NO.: 20-0360-WS-N

## THIRD AMENDED COMPLAINT

Plaintiffs William Harrison ("Harrison") and Cathexis Holding, LP ("Cathexis") allege the following for the Third Amended Complaint against Defendant Steve James Forde ("Forde" or "Defendant"), as ordered by the Court in its Order dated May 17, 2022 (Doc. 86):

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff William Harrison is an individual older than 19 years and who was a citizen of Harris County, Texas at the time this lawsuit was filed. He is currently a citizen of Puerto Rico. Harrison brings claims in this lawsuit against Forde in his individual capacity and as Assignee of claims against Forde assigned to him by Helanbak LLC, Kristian Agoglia, and a joint venture between Harrison and Agoglia (the "JV"), pursuant to that certain Assignment Agreement signed February 16, 2022, attached hereto as Exhibit A. (Hereinafter, Helanbak, Agoglia, and the JV shall be referred to together as the "Assignors").

2. Cathexis is a Texas limited partnership with its principal place of business in Texas. Ultimately, the citizenship of this limited partnership is based on the citizenship of Harrison, which was Texas at the time this lawsuit was filed, and which is currently Puerto Rico.

3. Specifically, for purposes of diversity jurisdiction, the citizenship of a limited partnership is determined by the citizenship of its partners.

4. The general partner is Cathexis Holdings GP, LLC, a Texas limited liability company. For purposes of diversity jurisdiction, the citizenship of a limited liability company is the citizenship of its members.

5. The members of Cathexis Holdings GP, LLC are three trusts: William Bruce Harrison Exempt GST Trust (a testamentary trust); William Bruce Harrison/DJH Jr Trust (a testamentary trust); and G4A Trust (a business trust). For purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of its trustees.

6. The trustees of the William Bruce Harrison Exempt GST Trust and the William Bruce Harrison/DJH Jr Trust are Harrison and Harrisburg Equitable Management LLC. Harrison is the sole member of Harrisburg Equitable Management LLC, which is a Nevada limited liability company. Harrison is also the beneficiary of these trusts.

7. The trustee of G4A Trust is Harrisburg Equitable Management LLC. Again, Harrison is the sole member of this LLC. Harrison is also the grantor and beneficiary of this trust.

8. The limited partners of Cathexis are the same three trusts that are also the sole members of Cathexis Holdings, GP, LLC.

9. Defendant Forde is an individual older than 19 years who resides in and is a citizen of Baldwin County, Alabama, which is within the Southern District of Alabama, Mobile Division.

10. Plaintiffs seeks to recover damages from Forde in the amount of $5,660,000, as well as other damages and appropriate relief, as set forth more specifically in the allegations below.

2

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because Harrison and Cathexis, and Forde are citizens of different States.

12.     Venue is proper in the Southern District of Alabama under 28 U.S.C. § 1391 because Forde resided in this district at the time this lawsuit was filed, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

13.     On January 21, 2020, the first case of a novel coronavirus (COVID-19) was confirmed in Washington, "where a man in his 30s developed symptoms after returning from a trip to Wuhan." Derrick Bryson Taylor, *How the Coronavirus Pandemic Unfolded: a Timeline*, N.Y. Times (June 9, 2020) *at* https://www.nytimes.com/article/coronavirus-timeline.html.

14.     As COVID-19 spread across the United States, it became apparent there was an inadequate supply of personal protective equipment (PPE) for first responders, healthcare workers, and others providing essential services—and there was not nearly enough domestic PPE supply to satisfy the demand for PPE in America:

> PPE shortages are currently posing a tremendous challenge to the U.S. healthcare system because of the COVID-19 pandemic. Healthcare facilities are having difficulty accessing the needed PPE and are having to identify alternate ways to provide patient care.

U.S. Centers for Disease Control & Prevention, *Strategies to Optimize the Supply of PPE and Equipment*, (May 18, 2020) *available at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index.html.

15.     "Hospitals struggled to purchase the equipment from their suppliers. One hospital supplier reported a delay of three to six months for N95 and surgical masks." Ken Alltucker, "Hospitals have shortages of protective equipment, specialists as they treat coronavirus patients,

3

federal watchdog reports," USA Today (Apr. 6, 2020) *available at* https://www.usatoday.com/story/news/health/2020/04/06/federal-watchdog-reports-hospitals-face-shortage-n-95-masks-surgical-masks-face-shields-gowns-and-gl/2954191001/. "Demand sent prices skyrocketing. One administrator reported masks that once cost 50 cents each now exceed $6." *Id*.

16. In March 2020, Harrison was introduced to Kristian Agoglia ("Agoglia"). Agoglia had experience in crisis supply and logistics. Agoglia was the manager and a member of Helenbak, LLC ("Helenbak"). Thereafter, Harrison and Agoglia decided to enter into a joint venture to source and supply PPE to states, municipalities, and businesses, which would be funded almost exclusively by Harrison's capital. Harrison and Agoglia did not give the JV a specific name.

17. The JV was formed in part because Agoglia had experience in crisis supply and logistics, and had contacts and contracts for sale of PPE; and Harrison had financial resources to fund the venture. Under the terms of the JV, Harrison was to fund the purchase of any PPE. Furthermore, any revenue from the sale of PPE would first go to reimburse Harrison for what he paid to fund the purchase of the PPE and if there were profits, it would be split with Harrison receiving 70% and Agoglia receiving 30%. At times, Harrison used Cathexis (of which Harrison is the sole beneficial owner) and Agoglia used Helenbak (of which Agoglia is an owner and the manager) to fulfill their respective obligations under the JV, but those companies were not part of the JV.

18. Around that time, Forde was sourcing PPE from China and having it delivered to or through the Port of Mobile, Alabama where he would sell it to purchasers in the United States.

19. Forde began discussing the sale of KN95 respirator masks ("Respirator Masks") with Harrison and Agoglia in late March or early April 2020.

4

20. In particular, Agoglia had a purchase order from Lessar, a hospital supply company in Florida, for three million Respirator Masks. Lessar had an urgent need for Respirator Masks. Agoglia had been working with a supplier of Respirator Masks to fill this order, but there were delays in getting the Respirator Masks, so Agoglia began searching for a different supplier who could get the Respirator Masks very quickly.

21. Agoglia was introduced to Forde in late March as someone who could get the Respirator Masks delivered quickly. Agoglia introduced Harrison to Forde as his partner in the deal they were discussing with Forde to supply the three million Respirator Masks to fill the Leesar purchase order. Forde knew that any representations made to Agoglia or Harrison would also be passed along to the other and that both Agoglia and Harrison were relying on his representations to either of them as they were partners in the deal.

22. Beginning in early April and thereafter, Forde communicated with Harrison and Agoglia via phone, email and text. During some of these communications, Forde indicated he was in Alabama. Forde also owns several Alabama businesses, including Ausbama LLC, Ausbama Property LLC, and Ausbama Music LLC. Forde communicated with Harrison via email through his Ausbama email account.

23. In an early phone conversation with Forde on or about April 2, 2020, Agoglia and Harrison told Forde that getting the Respirator Masks quickly was an important term of any deal as they already had masks on order that were coming later. In response, Forde represented to Harrison and Agoglia that he had a direct relationship with manufacturers in China and had the ability to get the Respirator Masks into the United States within 10 days from the time they placed the order.

5

24. A few days later, , Forde represented to Harrison and Agoglia by text and email that he had sourced three million Respirator Masks in China and would sell them to Harrison and Agoglia for $6,660,000. Harrison and Agoglia were interested in the deal, but only if the Respirator Masks could be delivered quickly. In particular, Harrison told Forde that the date by which Forde could deliver the Respirator Masks was a critical term of any agreement because the market for Respirator Masks was evolving and the value of the Respirator Masks on the market was likely to diminish as supply caught up with demand.

25. Shortly thereafter, Forde represented to Harrison and Agoglia that he had secured three million Respirator Masks in China. Forde further represented to Harrison and Agoglia that he had an aircraft reserved to ship the Respirator Masks from China which could depart from China within forty-eight hours of the time he received payment of the $6,660,000. Upon information and belief, Forde never intended to deliver the Respirator Masks and instead made the proposal as part of an unlawful scheme under which he intended to steal the money paid by Harrison for the Respirator Masks under the agreement.

26. In furtherance of his wrongful scheme, Forde sent an invoice dated April 9, 2020 in the amount of $6,660,000.00 for the three million Respirator Masks and requested that Harrison wire the funds to a Pinnacle Bank account. Harrison paid $6,660,000.00 funds to Forde by wire transfer from a bank account owned by Cathexis on the same day to pay for the Respirator Masks.

27. The invoice Forde sent listed Helenbak as the "vendor." The purchase order from Lessar was also in the name of Helenbak. However, the Lessar deal was for the benefit of the JV and its partners, Agoglia and Harrison.

28. On April 10, 2020, the day after Harrison wired $6,660,000 to Forde, Forde sent an email indicating that there would be a delay in the date he could deliver the Respirator Masks

6

because someone else had purchased the Respirator Masks he had originally secured to fulfill the order, but that it would only "change the timeline slightly." Forde then assured Harrison and Agoglia that he had already secured three million good quality Respirator Masks from another manufacturer. He also represented that the delay would not affect his ability to deliver the Respirator Masks to Harrison and Agoglia.

29. Agoglia responded that he and Harrison would consider changing their agreement to accept a delay in the delivery of the Respirator Masks, but asked that Forde provide a new delivery schedule so that he and Harrison could decide whether to proceed with the purchase of the Respirator Masks or have Harrison's money returned.

30. In an effort to keep Harrison's money, Forde sent another email to Agoglia and Harrison on April 10 stating "[d]efinitely have 3 Million masks coming from same manufacturer. . . . They will be delivered 250-450k per day for 7 days." Forde also stated by phone and email on April 10, 2020, that if Harrison and Agoglia would do the new deal, he would give them a discount by returning $1 million of the $6,660,000 with the additional agreement that Forde would be paid $700,000 upon delivery of the three million Respirator Masks to the United States.

31. Based on Forde's representations that he had secured three million Respirator Masks that could be delivered "250-450k per day for 7 days", Harrison and Agoglia agreed to the new delivery schedule of the Respirator Masks and agreed that Forde could use $5.66 million to purchase the three million Respirator Masks he had secured instead of returning all the money.

32. Thereafter, Forde returned $1 million by wire to the same Cathexis bank account from where the original $6,660,000 had been sent to him.

33. During this time, Harrison and Agoglia were sourcing customers in the United States. One of these customers needed approximately 100,000 masks immediately. To fulfill that

7

order, Forde told Harrison and Agoglia that he had 13,000 masks waiting to clear Customs in Mobile, Alabama and another 83,000 masks arriving in Mobile the next weekend. Forde received these masks in the Port of Mobile and had them delivered directly to the customer in Florida in late April 2020.

34. Forde further represented in his April 15, 2020 email that he could have the three million Respirator Masks delivered within two weeks. Forde represented that he could fulfill the order through one of two manufacturers. Specifically, he stated that one Chinese manufacturer had already produced 1.5 million masks that would likely ship in less than a week and would take three days to get to Customs and another one to three days to clear Customs. Forde stated that while this manufacturer needed to be added to the FDA's approved list before the masks could be shipped, he had already received verification that the FDA had approved the manufacturer to be added to the list and that the addition was "imminent." Alternatively, Forde represented that he had 1 million masks a day being shipped from another Chinese manufacturer that was already on the FDA's approved list. These shipments were going to begin in one week and would take the same amount of time in transit and to clear Customs.

35. Forde then sent Harrison and Agoglia another email later on April 15, 2020 with pictures that he represented were images of the masks he had secured to fulfill the order of Respirator Masks under the agreement. Forde further represented that the three million Respirator Masks were being manufactured by Dongguan Dacheng Electronic Technology Co., Ltd. Forde also provided Harrison and Agoglia with a technical data sheet as well as a PPE Test Report on the Respirator Masks.

36. Harrison and Agoglia relied on Forde's April 15, 2020 representations and agreed to give Forde up to two weeks, or until April 29, 2020, to deliver the Respirator Masks.

8

37.     Between April 10 and April 15, 2020, Forde had wrongfully spent approximately $1 million of the $5,660,000 on personal debts and investments. As of April 15, 2020 when Harrison and Agoglia agreed to give Forde up to April 29, 2020 to deliver, Forde had approximately $1,700,000 of the $5,660,000 left.

38.     Forde failed to deliver the Respirator Masks by April 29, 2020. On April 30, 2020, Harrison attempted to reach Forde to request that Forde return his money. Forde responded that he would call Harrison, but he failed to do so.

39.     On May 2, 2020, Harrison requested in writing that Forde provide a full refund of the $5,660,000.00 he had paid to Forde under the agreement. The same day, Forde agreed in writing to provide a full refund of the $5,660,000.00.

40.     On May 6, 2020, Harrison followed up with Forde and asked when Forde was going to send the wire of the $5,660,000 refund. Forde did not respond.

41.     On May 7, 2020, Harrison followed up again. Forde responded to Harrison that he was collecting some invoices and would wire the funds to Harrison in twelve days. Harrison then requested that Forde send him partial refund amounts as he collected invoices rather than waiting to send the full amount of the refund all at once. Forde stated, "I will pay it down as I can."

42.     On May 11, 2020, after not receiving a refund from Forde of any portion of his money, Harrison requested that Forde return at least $1,000,000 within a day or two. Forde responded that he was "working on it all." He said that the manufacturer that was to provide Respirator Masks for Harrison and Agoglia was no longer approved by the FDA and that the FDA had reduced the number of approved manufacturers from eighty to thirteen. Forde represented that he could use Harrison's money to try to get Respirator Masks from one of the thirteen approved

9

manufacturers. Harrison told him he was not interested in this proposal and asked when Forde would send the first wire. Forde responded that it "should be this week."

43. On May 19, 2020, Harrison requested that Forde send the full refund to him within the week.

44. Forde responded that he "was trying to get some things moved around." He further said that "I am working through it and will get it all sorted out."

45. In late May or early June, Forde approached Harrison and Agoglia and told them that he had 10 million Respirator Masks in California and would sell them to Harrison and Agoglia for $3.25 each, who could then resell them for a profit to try to recoup the $5,660,000 he owed to Harrison. Harrison declined the offer and again requested a full refund of the $5,660,000.

46. Since then, Forde has failed to refund any of Harrison's $5,660,000.

## CAUSES OF ACTION

### Count One: Breach of Contract

47. Harrison realleges the factual allegations of paragraphs 13-46 as if set forth here in full.

48. In April 2020, Forde offered to sell Harrison and/or one or more of the Assignors three million Respirator Masks for $6,660,000.00 which would depart from China en route to the United States within forty-eight hours of receiving payment.

49. Harrison and/or one or more of the Assignors accepted Forde's offer and paid $6,660,000.00 to Forde for the Respirator Masks.

50. After failing to secure the Respirator Masks, Forde returned $1,000,000.00 to Harrison the following day.

51. Harrison and/or one or more of the Assignors agreed to extend the deadline by which the Respirator Masks would need to be delivered to April 29, 2020.

10

52. Forde breached the agreement because he failed to deliver the three million Respirator Masks by April 29, 2020.

53. Forde agreed to refund the remaining $5,660,000.00 Harrison paid for the Respirator Masks.

54. Forde has failed to return the money Harrison and/or one or more of the Assignors paid for the Respirator Masks.

55. As a result of Forde's breach of the agreement, Harrison individually or as assignee of the Assignor's claims has been damaged.

### Count Two: Conversion

56. Harrison and Cathexis reallege the factual allegations of paragraphs 13-46 if set forth here in full.

57. Forde wrongfully and intentionally converted Harrison's and/or Cathexis' personal property by wrongfully benefiting from, taking, detaining, interfering and assuming ownership, dominion and control over it.

58. Harrison and/or Cathexis demanded the return of his $5,660,000, and Forde has failed or refused to return the $5,660,000.

59. Forde used these funds for his own purposes and Harrison and/or Cathexis did not consent to Defendant's conduct.

60. As a result of this conversion, Harrison and/or Cathexis has been damaged.

### Count Three: Fraud

61. Harrison realleges the factual allegations of paragraphs 16-46 as if set forth here in full.

62. On or about April 9, 2020, Forde intentionally, recklessly, negligently and/or innocently misrepresented to Harrison and Agoglia, who were partners in the JV, multiple existing material facts including that he had already secured three million Respirator Masks in China and that he had an aircraft reserved to ship 3 million Respirator Masks from China within forty-eight hours of receipt of payment.

63. While Forde was unaware of the details of the JV and the specific JV agreement between Harrison and Agoglia, Forde knew that Harrison and Agoglia were partners in the deal to purchase three million Respirator Masks from Forde for sale to Lessar, a hospital supply company. Forde also knew that Harrison was the source of the funds for the purchase of the three million masks. As such, Forde knew that any representation to one of Harrison or Agoglia in connection with this deal would be relayed to the other and relied upon by both of them as partners.

64. Harrison and Agoglia reasonably relied on the above-described false, material misrepresentations to the detriment of Harrison and the JV by, among other things, paying Forde $6,660,000 on April 9, 2020, $5,660,000 of which has not been returned.

65. Had Harrison and Agoglia known that the representations were not true, Harrison, Agoglia and the JV would not have agreed to proceed with the deal with Forde, and Harrison would not have directed Cathexis to wire Forde $6,660,000, $5,660,000 of which was never returned.

66. On or about April 10, 2020, by phone, email and text, Forde intentionally, recklessly, negligently and/or innocently misrepresented to Agoglia and Harrison that another purchaser had purchased the 3 million Respirator Masks he had originally secured, but that he had already secured 3 million Respirator Masks from another manufacturer that would be delivered at a later date. Agoglia responded that he would need to know the proposed delivery schedule and

12

then check with Harrison, his partner, to determine if they wanted to proceed with the new deal, or have the money returned. In response, also on April 10, by phone, email and text, Forde intentionally, recklessly, negligently and/or innocently misrepresented to Agoglia and Harrison that he could deliver the new three million Respirator Masks "250-450k per day for 7 days."

67. Harrison and Agoglia reasonably relied upon these misrepresentations to the detriment of Harrison and the JV by not demanding a return of the $5,660,000. Had Harrison and Agoglia known that the representations were not true, Harrison, Agoglia and the JV would not have agreed to proceed with the deal and would have demanded the $5,660,000 be returned. At this point in time, Forde had not yet spent all of the $5,660,000.

68. On or about April 15, 2020, Forde emailed photographs of the Respirator Masks and technical data sheets regarding these masks to Harrison and Agoglia which he intentionally, recklessly, negligently and/or innocently misrepresented were the Respirator Masks he had secured to fulfill the order of Harrison, Agoglia and the JV. Harrison and Agoglia reasonably relied upon these misrepresentations to the detriment of Harrison and the JV by extending the delivery date to April 29, 2020 instead of stopping the order and demanding a return of the $5,660,000. Had Harrison and Agoglia known that the representations in the April 15, 2020 email were not true, Harrison, Agoglia and the JV would not have agreed to give Forde an extension on the delivery date and would have demanded a return of the $5,660,000. At this point in time, Forde had not yet spent all of the $5,660,000.

69. Forde benefitted as a result of the fraudulent misrepresentations by receiving and using the $5,600,000 for his own unlawful purposes.

70. As a result of Forde's fraud, Harrison and the JV have been damaged. In particular, Harrison is the CEO and beneficial owner of Cathexis, which wired the money at issue to Forde at

13

Harrison's direction. The money paid by Cathexis which has not ben recovered is ultimately a loss to Harrison as he is the only beneficial owner of Cathexis.

71. In addition, Harrison directed that the money be sent to Forde to fulfill his obligations to the JV as he agreed to fund the projects of the JV. Under the terms of the JV, neither Harrison nor Agoglia receive any profits from the JV on the three million Respirator Mask deal with Forde until Harrison has received a return of the funds that he made available for the purchase of the masks. Ultimately, any loss to the JV is a direct loss to Harrison as he is the sole funder of deals and was the sole funder of the three million Respiratory Mask deal with Forde. Furthermore, Harrison has been damaged because Harrison was entitled to a return of the money he provided in connection with the JV in the event such money is paid to or on behalf of Agoglia, Helenbak or the JV.

72. In the alternative, the JV has been damaged in that it is out $5,660,000 that Harrison provided for the purchase of the three million Respirator Masks pursuant to the JV agreement.

**Count Four: Promissory Fraud**

73. Harrison realleges the factual allegations of paragraphs 16-46 if set forth here in full.

74. Forde made material promises to Harrison and Agoglia, whom he knew to be partners in the three million Respirator Mask deal, knowing they would likely induce Harrison, Agoglia and the JV, to pay $5,660,000 for the Respirator Masks and to continue to allow him to keep the $5,660,000 for a period of time thereafter, including:

    a. On April 10, 2020, Forde represented by phone, email and text to Agoglia and Harrison that while the 3 million Respirator Masks were no longer available from the original manufacturer, they could be sourced from a

14

               different manufacturer with a slight delay in delivery, that it would not affect his ability to deliver the masks and that they would be delivered in smaller shipments within a two week period;

b.    On April 15, 2020, Forde represented by phone, email and text to Agoglia and Harrison that he would deliver the masks within two weeks through one of two manufacturers which he described in detail; and,

c.    On May 2, 2020, after failing to deliver the masks within the agreed-upon time period, Forde represented by text to Harrison that Forde would issue a full refund to Harrison; and,

d.    Promising on multiple occasions by phone and text to Harrison and Agoglia thereafter that he would return Harrison's money.

75.    Forde did not intend to keep these promises at the time they were made, and Forde intended to deceive Harrison and Agoglia, whom he knew to be partners in the three million Respirator Mask deal, and the JV, when he made the promises.

76.    Harrison and Agoglia reasonably relied on the above-described promises to the detriment of Harrison and the by, among other things, paying Forde $5,660,000, not demanding a return of the money, and allowing Forde to have his money for additional time rather than returning it.

77.    Had Harrison and Agoglia known that the representations were not true and that Forde never had the present intent to perform at the time he made the representations, Harrison, Agoglia and the JV would not have agreed to proceed with the deal and would have demanded the $5,660,000 be returned. As of the time Forde made the misrepresentations on April 10 and 15, 2020, he had not yet spent all of the $5,660,000

15

78. Forde benefitted as a result of his fraudulent conduct by keeping the $5,600,000 for his own unlawful purposes.

79. As a result of Forde's fraud, Harrison and the JV have been damaged. In particular, Harrison is the CEO and beneficial owner of Cathexis, which wired the money at issue to Forde at his direction. The money paid by Cathexis which has not been recovered is ultimately a loss to Harrison as he is the only beneficial owner of Cathexis.

80. In addition, Harrison directed that the money be sent to Forde to fulfill his obligations to the JV as he agreed to fund the projects of the JV. Under the terms of the JV, neither Harrison nor Agoglia receive any profits from the JV on the three million Respirator Mask deal with Forde until Harrison has received a return of the funds that he made available for the purchase of the masks. Ultimately, any loss to the JV is a direct loss to Harrison as he is the sole funder of deals and was the sole funder of the three million Respiratory Mask deal with Forde. Furthermore, Harrison has been damaged because Harrison was entitled to a return of the money he provided in connection with the JV in the event such money is paid to or on behalf of Agoglia, Helenbak or the JV.

81. In the alternative, the JV has been damaged in that it is out $5,660,000 that Harrison provided for the purchase of the three million Respirator Masks pursuant to the JV agreement.

## **Count Five: Unjust Enrichment**

82. Harrison and/or Cathexis reallege the factual allegations of paragraphs 13-46 as if set forth here in full.

83. Harrison and/or Cathexis paid $5,600,000 to Forde in reliance on the representations alleged above.

84. Forde failed to deliver the 3 million Respiratory Masks as promised.

16

85. Forde knowingly accepted and continues to retain the $5,600,000 paid by Harrison and/or Cathexis.

86. The retention of the funds by Forde under the circumstances is wrongful, inequitable and constitutes unjust enrichment.

### Count Six: Money Had and Received

87. Harrison and/or Cathexis reallege the factual allegations of paragraphs 13-46 as if set forth here in full.

88. Forde had no right or claim to the funds provided to him by Harrison and/or Cathexis.

89. Forde has retained money paid by Harrison and/or Cathexis after being requested to return the funds.

90. In equity and good conscience, the money was improperly paid to Forde because of mistake or fraud.

### Prayer for Relief

Harrison and Cathexis request this Court to enter judgment in their favor and against Forde for compensatory and punitive damages and any additional relief this Court determines is just, including, without limitation, interest, reasonable attorneys' fees, and costs of court.

Respectfully submitted,

*s/Robert E. Battle*
Robert E. Battle
Alabama Bar Number: ASB-7807-T67R
Harlan F. Winn, III
Alabama Bar Number: ASB-7322-N73H
***Attorneys for Plaintiffs William Harrison and Cathexis Holdings, LP***

OF COUNSEL:

BATTLE & WINN LLP
2901 Second Avenue South, Suite 220
Birmingham, AL 35233
Telephone: (205) 397-8160
Facsimile: (205) 397-8179
Email: rbattle@battlewinn.com
hwinn@battlewinn.com
aplant@battlewinn.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas M. O'Hara
O'Hara Watkins, LLC
1307 Main Street
Daphne, AL 36526
Email: tom.ohara@toharalaw.com

And, I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: NONE

*s/Robert E. Battle*
OF COUNSEL

18