# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM HARRISON, *et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:23-00375-N** |
| | ) | |
| **TONYA FORDE, *et al.*,** | ) | |
| **Defendants.** | ) | |

## <u>ORDER ON MOTION FOR SUMMARY JUDGMENT</u>

This removed civil action is before the Court on the "Motion for Summary Judgment" under Federal Rule of Civil Procedure 56, with attached supporting brief and evidence, filed November 22, 2024 (Doc# 20), by the Defendants—Tonya Forde, Steve James Forde, and CKC Properties, LLC. In accordance with the Court's briefing schedule (Doc# 21), the Plaintiffs—William Harrison and Cathexis Holdings, LP—filed a response in opposition to said motion (Doc# 23), with separate supporting evidence (Doc# 24), and the Defendants filed a reply to the response, with attached supporting evidence (Doc# 27). Briefing on the present motion is now closed. Before briefing closed, the Court, with the consent of the parties, designated the undersigned Magistrate Judge to conduct all further proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs# 25, 26).

Upon due consideration, the undersigned finds that the Defendants' motion for summary judgment is due to be **GRANTED in part** and **DENIED in part**, as set out herein.

# I. *Procedural Background*

On July 17, 2020, Harrison initiated Civil Action No. 1:20-cv-00360 (hereinafter, "the 2020 Action") in this Court by filing a complaint against Steve Forde, *see* Fed. R. Civ. P. 3; (1:20-cv-00360 Doc# 1), which was soon amended at the Court's direction to correct a defect in Harrison's allegations supporting subject-matter jurisdiction under 28 U.S.C. § 1332(a). (1:20-cv-00360 Docs# 4, 5). On April 4, 2022, with the Court's leave, Harrison filed a second amended complaint joining Cathexis as a plaintiff. (*Id.* Docs# 65, 67). Forde moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6). (*Id.* Doc# 74). On May 18, 2022, the Court partially granted the motion to dismiss the second amended complaint, but only as to Counts Three and Four, and only "to the extent they employ the phrase, 'and/or one or more of the Assignors.' " (*Id.* Doc# 86). The Court also granted Harrison and Cathexis leave to file a third amended complaint to address certain pleading deficiencies. (*Id.*). Harrison and Cathexis did so, filing their third amended complaint on the deadline, May 24, 2022 (*id.* Doc# 88)—the final amendment to their complaint in the 2020 Action.

Harrison and Cathexis's claims against Forde in the 2020 Action arose out of a failed business transaction in the first half of 2020, during the first months of the COVID-19 pandemic, in which Forde was to obtain respirator masks from China for resale in the United States by Harrison and his business partner, Kristian Agoglia. (*See id.*). The third amended complaint in the 2020 Action alleged state law causes of action for breach of contract, conversion, fraud, promissory fraud, unjust enrichment, and money had and received. (*See id.*).[1] Forde filed a motion for summary judgment

---

[1] Forde asserted a counterclaim for defamation against Harrison in the 2020 Action, but the Court granted summary judgment in favor of Harrison and dismissed it with

on most claims in the third amended complaint, which the Court denied except as to the claim of fraud based on a particular April 15, 2020 representation. (*Id.* Docs# 102, 111).

The Plaintiffs' remaining claims proceeded to a jury trial. At the close of all evidence, but prior to the submission the case to the jury, the Plaintiffs stated on the record that they were abandoning their money-had-and-received claims. The Court construed that abandonment as a motion to amend the operative complaint to drop those claims, and granted that construed motion. (*Id.* Doc# 152). After deliberating, the jury returned a verdict in favor of Forde on all claims except on Harrison's claim of unjust enrichment, for which it awarded $1.1 million in compensatory damages. (*Id.* Doc# 145). Final judgment was entered in the 2020 Action on August 21, 2023. (*Id.* Doc# 146). Harrison filed a timely motion to amend the judgment under Federal Rule of Civil Procedure 59(e) to include an award of pre-judgment interest, which the Court denied. (*Id.* Docs# 153, 161). Forde filed no appeal in the 2020 Action; Harrison appealed only the denial of his Rule 59(e) motion, which was affirmed. (*Id.* Docs# 163, 172, 176).

A month after entry of final judgment in the 2020 Action, Harrison and Cathexis commenced the present case against Tonya Forde and CKC in the Circuit Court of Mobile County, Alabama, filing a First Amended Complaint—the operative complaint in this action—a week later to join Steve Forde as a defendant. (Doc# 1-1, PageID.12-19, 33-47). The First Amended Complaint alleges claims for conversion (Count One), unjust enrichment (Count Two), and money had and received (Count Three) against Tonya Forde and CKC based on information learned during discovery

---

prejudice. (1:20-cv-00360 Docs# 14, 42, 72).

in the 2020 Action. More specifically, the Plaintiffs claim that Tonya Forde misappropriated a portion of the money paid by the Plaintiffs to Steve Forde as part of the failed 2020 respirator mask venture, both by spending it directly on personal expenses or by paying it to CKC, which the Plaintiffs allege is owned solely by Tonya and is her alter ego. The First Amended Complaint also alleges claims by Harrison against Steve Forde for misrepresentation/suppression (Count Four), asserting that on April 14, 2020, Steve Forde falsely represented to Harrison and Agoglia that the mask order could not be cancelled, and/or suppressed the fact that it could. Harrison alleges that, had he known this, he would have cancelled the order, instructed Forde to return any money not already been sent to other involved entities, and taken steps to recover other funds from a wire transfer that had not been completed at the time.

The Defendants removed the case to this Court under 28 U.S.C. §§ 1332(a) and 1441(a) on October 4, 2023 (Doc# 1), the Court denied the Plaintiffs' motion to remand (*see* Docs# 5, 9, 10), and a scheduling order was then entered under Federal Rule of Civil Procedure 16(b) (Doc# 15). Following the close of all discovery, the Defendants timely filed the present motion for summary judgment on all claims (Doc# 20).

## II.    *Summary Judgment Legal Standards*

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome of the suit under governing law and it is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd.*

*v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"Summary judgment is only appropriate if a case is 'so one-sided that one party must prevail as a matter of law.' " *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson*, 477 U.S. at 251-52) (citation omitted). However, a " 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam). In other words, "there must be enough of a showing that the jury could reasonably find for that party … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)). *See also Allen*, 121 F.3d at 646 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations omitted)); *Cottrell v. Caldwell*, 85 F.3d 1480,

1486 n.3 (11th Cir. 1996) ("In determining the facts for summary judgment purposes, we, like the district court, are required to view the evidence in the light most favorable to the plaintiff. When that is done, a pure issue of law is created."). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.' " *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, " 'an inference based on speculation and conjecture is not reasonable.' " *Id.* (quoting *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

"Where … the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' " *Hammer*, 20 F.3d at 1141 (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (citations and quotations omitted). *Accord, e.g.*, *Baker v. Upson Regional Medical Center*, No. 22-11381, 2024 WL 1003534, at *4 (11th Cir. Mar. 8, 2024) (per curiam).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Allen*, 121 F.3d at 646 (quotation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Id.* (quotation omitted). However, "[i]n opposing a

motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' " *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[c]onclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")).

Additionally, a district court is only required to consider "the cited materials" when deciding a summary judgment motion. Fed. R. Civ. P. 56(c)(3). While the court also "may consider other materials in the record[,]" *id.*, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts…[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (habeas corpus proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resol. Tr. Corp.*, 43 F.3d at 599).

### III.    *Analysis*[2]

### A.    **Res Judicata**

The present motion asserts that certain claims are due to be dismissed as barred by res judicata. "Res judicata is a judicially crafted doctrine, created to provide finality and conserve resources." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011). "The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court…Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). *Accord Lee L. Saad Const. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 516-17(Ala. 2002).

"[W]hile 'federal common law determines the preclusive effect of an earlier judgment against a party,' in applying federal common law, we must 'adopt[ ] the state rule of collateral estoppel to determine the preclusive effect of a judgment of a federal court that exercised diversity jurisdiction.' " *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020) (quoting *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1335, 1337 (11th Cir. 2017)). Because this Court exercised diversity jurisdiction in the 2020 Action, the Court "here [i]s required to determine the preclusive effect of that earlier federal judgment based on the rules of issue preclusion from the State in which the rendering court sat—…Alabama." *Id.*

---

[2] The undersigned finds that a detailed recitation of factual findings is unnecessary, and discusses only the evidence necessary to address the arguments raised in the present motion.

The Defendants assert (1) that claim preclusion applies to Harrison's misrepresentation and suppression claims against Steve Forde in Count Four; (2) that both claim and issue preclusion apply to the Plaintiffs' conversion claims against Tonya Forde and CKC in Count One; (3) that issue preclusion applies to Cathexis's equitable claims against Tonya Forde in Counts Two and Three; and (4) that issue preclusion applies to Harrison's claim of unjust enrichment against Tonya Forde in Count Two.

### 1. Count Four

Under Alabama law, "[f]or ['traditional'] res judicata to apply there must be '(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.' " *McGilvray v. Perkins*, 407 So. 3d 283, 288–89 (Ala. 2024) (quoting *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998)). "If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation." *Equity Res. Mgmt.*, 723 So. 2d at 636. "Res judicata, therefore, bars a party from asserting in a subsequent action a claim that it has already had an opportunity to litigate in a previous action. []The corollary to th[is] rationale is that the doctrine of res judicata will not be applied to bar a claim that could not have been brought in a prior action." *Lee L. Saad Const.*, 851 So. 2d at 517.

The first three elements of claim preclusion are clearly met for the Count Four claims—this Court, "a court of competent jurisdiction," rendered a merits judgment

on Harrison's claims against Forde in the 2020 Action—and the Plaintiffs do not argue otherwise. As for the fourth element,

> [i]n Alabama "[i]t is well-settled that 'the principal test for comparing causes of action [for the application of *res judicata* ] is whether the *primary right and duty or wrong* are the same in each action.' " *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993) (emphasis added), *cert. denied sub nom. Sinkfield v. Wesch*, 510 U.S. 1046, 114 S. Ct. 696, 126 L. Ed. 2d 663 (1994). "Res judicata applies not only to the *exact legal theories* advanced in the prior case, but to *all legal theories and claims* arising out of the same nucleus of operative facts." *Id.* (emphasis added). "The question is whether the same evidence substantially supports both actions.... It is considered the same cause of action when the same evidence is applicable in both actions." *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988). As it is sometimes stated, " '[w]here two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.' " *Silcox v. United Trucking Serv., Inc.*, 687 F.2d 848, 852 (6th Cir. 1982); *Harrington v. Vandalia–Butler Bd. of Educ.*, 649 F.2d 434, 437 (6th Cir. 1981); see also *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1166 (1st Cir.), *cert. denied*, 502 U.S. 816, 112 S. Ct. 69, 116 L. Ed. 2d 44 (1991)[.]

*Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928–29 (Ala. 2000) (per curiam).[3]

Count Four is based on the following allegations:

---

[3] As the Plaintiffs correctly point out, and as the Defendants acknowledge in reply, the Defendants incorrectly argued for the application of federal *res judicata* law in their opening brief. Nevertheless, as the Defendants' reply correctly notes, the federal and Alabama standards for determining whether two cases involve the same cause of action for purposes of claim preclusion are substantially the same. *See NAACP v. Hunt,* 891 F.2d 1555, 1561 (11th Cir. 1990) ("The final element of *res judicata* requires that the same cause of action be presented in both cases. This Circuit has recognized that 'the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action." *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979) (citing *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir. 1975)). *Res judicata* applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact.")

Steve Forde knew that Harrison and Agoglia were business partners and that any representations he made to Agoglia would be relied upon by Harrison, and vice versa.

On April 14, 2020, Agoglia asked Steve Forde if the mask order could be cancelled. Steve Forde stated he would have to check on it.

Steve Forde then spoke to Trevor Vita and learned that the order could be cancelled. After learning that the order could be cancelled, on April 14, 2020 Steve Forde intentionally, recklessly, and/or negligently misrepresented to Agoglia that the order could not be cancelled.

Alternatively, on April 14, 2020, Steve Forde intentionally, recklessly, and/or negligently, suppressed the material fact that the order could be cancelled after having been asked if the order could be cancelled.

…Had Harrison known that the order could have been cancelled, he would have instructed Steve Forde to do so and return any money that could be recovered, including $1,363,750 that had not been sent to Hong Kong, and $1,045,000 that had not been sent to Colorado Tech [Supply Ltd.], or taken steps to prevent additional money from being sent to Colorado Tech or Hong Kong. In addition, had Harrison been told the truth, efforts could have been made to recover the $1,500,000 from the wire transfer from Colorado Tech to Hong Kong that had been initiated but that had not yet arrived.

(Doc#1-1 ¶¶ 62-65, 68, PageID.44-45 (paragraph numbering omitted)).

The undersigned agrees with Steve Forde that the misrepresentation/suppression claims in Count Four are barred by *res judicata*, because the Plaintiffs relied on the same underlying facts to "substantially support" their conversion claims in the 2020 Action. In the Court's "Standing Order Governing Final Pretrial Conference" attached to the Federal Rule of Civil Procedure 16(b) scheduling order in the 2020 Action, the parties were ordered to prepare and file a "Joint Pretrial Document" prior to the Rule 16(e) final pretrial conference, which was

to contain, among other things, a section setting out "Triable Claims and Affirmative Defenses" "that are to be litigated," and for each providing a listing of its legal elements and statements of agreed and disputed facts related to the claim or defense. (1:20-cv-00360, Doc# 91-1 PageID.1325 & n.1. In the "Triable Claims and Affirmative Defenses" section of the Joint Pretrial Document filed in the 2020 Action, in setting out the disputed facts with regard to their claim of conversion, the Plaintiffs included a subsection titled "Plaintiffs' [sic] Contend that the Money Forde Sent to CTS [Colorado Tech Supply Could Have Been Refunded by CTS Before it was Sent to the Manufacturer." (1:20-cv-00360, Doc# 124 PageID.1663). That subsection included, *inter alia*, the following:

> As of April 13, CTS and Forde knew that the manufacturer of the respirator masks was not on the FDA Appendix A approved list.

> At 1:08 PM on April 14, Agoglia texted Forde reminding him that he had sent Forde the FDA Appendix A approved list on April 10, that the masks would be unusable for all of his customers in the United States if the manufacturer was not on the list, and asking if the order could be cancelled.

> Forde responded at 1:37 PM on April 14, that he would find out and would need a few hours to get a clear answer.

> On April 14, 2020, between 12:30 PM and 1:30 PM, CTS asked Forde if he wanted to cancel the order because the manufacturer was not on the FDA Appendix A approved list.

> Forde responded to CTS on April 14 that he did not want to cancel the order and instead wanted to continue to try to get the manufacturer on the FDA Appendix A approved list.

> Plaintiffs contend that even though the order could have been cancelled, Forde told Agoglia that the order could not be cancelled.

Plaintiffs contend that had Forde cancelled the order, CTS would have tried to stop the initial wire of $1,500,000 sent to OIS on April 13 and would not have sent the $1,363,750 wire to OIS on April 15[.]

... Forde further contends that CTS did not testify that it could cancel the order. Rather, CTS testified that it did not know whether it could cancel the order, and if it attempted to do so, it would be messy. In other words, there was no guarantee of a full refund…

(1:20-cv-00360, Doc# 124 PageID.1663-1665 (paragraph numbering omitted)).

After holding the Rule 16(e) final pretrial conference, the Court entered an order stating, among other things, that it was incorporating the parties' Joint Pretrial Document, and that it "henceforth shall constitute the final statement of the claims, causes of action, and issues involved in this action, govern the conduct of trial, and form the basis for any relief afforded by the Court." (1:20-cv-00360, Doc# 126 PageID.1798). *See* Fed. R. Civ. P. 16(e) ("The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence…The court may modify the order issued after a final pretrial conference only to prevent manifest injustice."). The jury subsequently rejected the Plaintiffs' conversion claims. (Doc# 145, PageID.2008). Because Harrison pursued his conversion claim in the 2020 Action based, in part, on the theory that Forde falsely hold Agoglia on April 14, 2020, that the respirator mask order could not be cancelled, he is barred from using that "same nucleus of operative fact" to pursue Forde for fraudulent misrepresentation/suppression in this action.

Harrison attempts to resist this conclusion by claiming he could not have brought his misrepresentation/suppression claims in the 2020 Action because the Court denied the Plaintiffs leave to amend their complaint in the 2020 Action to add

such claims. The Court did so on the grounds that the motion for leave to amend was filed after the deadline for such motions established by the Rule 16(b) scheduling order, and the Plaintiffs had failed to demonstrate the necessary diligence required for modifying a scheduling order deadline to be permitted to bring the late amendment. (1:20-cv-00360 Doc# 85). The undersigned disagrees with Harrison that the denial of leave to amend prevents application of *res judicata* here.

In cases where "the plaintiff is seeking to add additional claims against the *same* defendant and leave to amend is denied without reaching the merits of the claim[, t]he courts are generally in agreement that these new claims should be barred" under *res judicata. N. Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 87-88 (2d Cir. 2000) (citing cases). As the Second Circuit Court of Appeals has explained:

> Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is appropriate. When claim preclusion is applied in these cases, it is not the actual decision to deny leave to amend that forms the basis of the bar. *See, e.g., Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 564 (5th Cir. 1983) (en banc) (finding no distinction between a plaintiff electing to advance additional claims after final judgment and a plaintiff advancing additional claims in a motion to amend its complaint, implicitly recognizing that the actual decision denying leave would be irrelevant for claim preclusion purposes). Indeed, the decision denying leave to amend is usually based on factors such as timeliness or convenience…and is not an adjudication "on the merits." In fact, the actual decision denying leave to amend is irrelevant to the claim preclusion analysis. *See Integrated Technologies Ltd. v. Biochem Immunosystems (U.S.),* 2 F. Supp. 2d 97, 103 (D. Mass. 1998) ("The fact that a judge has denied a motion to amend which seeks leave to add a new claim to an existing case should have no bearing either way on the question whether plaintiff may file the new claim as a separate lawsuit, *unless* the denial of leave to amend is itself based on ... the merits."). It

may be a specific event upon which claim preclusion can focus, but the decision itself is not necessary for claim preclusion to apply.

Instead, the bar is based on the requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event. *See, e.g., Nilsen,* 701 F.2d at 563 ("[T]heories which were the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there."). The claims will be barred through the normal rule barring claims that should have been brought, regardless of whether the plaintiff seeks to add them to the initial suit. *See Integrated Technologies,* 2 F. Supp. 2d at 103 (finding, as a general principle, that where denial of leave to amend is not based on the actual merits of the claims, "ordinary principles of claim preclusion should determine whether the plaintiff should be permitted to assert such new claim in a separate lawsuit"). Thus, the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit. The bar, however, turns on normal principles of claim preclusion…

*Id.* at 88.

Thus, the denial of Harrison's leave to amend as untimely does not prevent the application of res judicata to those claims he attempted to assert through that amendment. Moreover, despite the denial of leave to amend, Harrison was still ultimately able to pursue a claim at trial against Forde based on his falsely claiming the mask order could not be cancelled, under a theory of conversion instead of fraud. As noted above, Harrison included that theory in the parties' Joint Pretrial Document, seemingly with no objection from Forde, and the Court subsequently adopted the Joint Pretrial Document as "the final statement of the claims, causes of action, and issues involved in" the 2020 Action. *See FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d

1071, 1089 (11th Cir. 2016) ("a pretrial order supersedes the pleadings" (quotation omitted)).[4]

Accordingly, summary judgment is due to be granted on Count Four in favor of Steve Forde, on the ground that it is barred by res judicata.[5]

---

[4]    Harrison also cites *Chavers v. National Security Fire & Casualty Co.*, 456 So. 2d 293 (Ala. 1984) (per curiam), for the proposition that "a claim *could not have been* brought if a plaintiff did not know it existed at the time it filed the original case." (Doc# 23, PageID.248). However, the undersigned does not read *Chavers* to state such a bright-line rule. Indeed, such an absolute rule would undermine *res judicata*'s purposes of finality and conservation of resources, as it would allow a plaintiff who learns of any additional causes of action through discovery in a case to simply hold those claims in reserve, no matter how early they are discovered or how closely related they are to the same nucleus of operative fact, to be asserted in a new action should the plaintiff be disappointed with the outcome of the first case. Moreover, the facts in *Chavers* are distinguishable from those here.

*Chavers* involved a suit by a couple against their insurance company for bad faith refusal to honor an insurance claim. The trial court agreed with the defendant's argument that the claim was barred by res judicata because the plaintiffs knew or should have known of the existence of their bad faith claim at the time they had filed a prior lawsuit against the defendant for payment on their insurance policy, and granted summary judgment to the defendant. On appeal, the Alabama Supreme Court reversed that ruling. In Alabama, a "cause of action for bad faith refusal to honor an insurance claim accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal[, and t]he accrual of a claim for bad faith is a question of fact to be determined by the circumstances of each case." 456 So. 2d at 294. The supreme court found summary judgment on res judicata grounds was inappropriate because the record contained "conflicting evidence concerning whether the [plaintiffs] knew or should have known of [their insurer]'s bad faith[,]" since the husband plaintiff "testified he first learned during the trial of the insurance claim that the sole basis for [the insurer]'s refusal to pay was the uncorroborated hearsay testimony of a convicted felon." *Chavers*, 456 So. 2d at 294

Here, on the other hand, Harrison learned of the facts underlying his Count Four fraud claims during discovery in the 2020 Action, well in advance of trial, and was even relied on them at trial as part of his conversion claims in the 2020 Action.

[5]    The undersigned briefly addresses, and rejects, the Defendants' other arguments for summary judgment on Count Four.

First, they argue that Count Four is barred under Alabama's 2-year statute of limitation for bringing fraud claims, *see* Ala. Code § 6–2–38(l); *Howard v. Mut. Sav. Life Ins. Co.*, 608 So. 2d 379, 381 (Ala. 1992), because this case was commenced on September 22, 2023, over three years after Steve Forde allegedly made the fraudulent statements

### 2. Tonya Forde & CKC's Entitlement to Assert Res Judicata

*Res judicata* and estoppel are affirmative defenses, which the Defendants, as the ones asserting them, bear the burden of proving each element. *See* Fed. R. Civ. P. 8(c)(1); *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (per curiam); *Stewart v. Brinley*, 902 So. 2d 1, 11 (Ala. 2004). Moreover, as the movants on summary judgment, the Defendants bear the burden of showing they are, *inter alia*, "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Defendants'

---

underlying Count Four on April 14, 2020. However, as the Plaintiffs correctly note, that "two-year period does not begin to run until the plaintiff has discovered, or should have discovered, the fraud." *Howard*, 608 So. 2d at 381. *See also* Ala. Code § 6-2-3. Moreover, "[t]he question when the plaintiff discovered or should have discovered the fraud for statute-of-limitations purposes is generally one for the jury[,]" though this issue can be "removed from the purview of the jury and can be decided as a matter of law…where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000) (quotations omitted). Here, Harrison has submitted substantial evidence that, if believed by a trier of fact, would support his misrepresentation and suppression claims accruing on October 1, 2021. That is the date Harrison first received, during discovery in the 2020 Action, a memo by Colorado Tech CEO Trevor Vita documenting a phone call he had with Steve Forde on April 13, 2020, in which Vita asked Forde if he wanted to cancel the mask order and Forde declined. While Steve Forde points to other evidence suggesting that Harrison should have learned of this information earlier, none of it conclusively establishes that Harrison "actually knew" that the order could be cancelled prior to his receipt of Vita's memo on October 1, 2021. Accordingly, whether Harrison should have discovered the alleged fraud at an earlier date is a matter for trial, not summary judgment.

Second, the Defendants argue that the Plaintiffs have not presented evidence that Steve Forde misrepresented or suppressed the fact that the order could have been cancelled, citing Forde's own trial testimony from the 2020 Action that Colorado Tech did not tell him it could cancel the transaction. In response, the Plaintiffs have pointed to Vita's April 13, 2020 memo and deposition testimony indicating that he asked Steve Forde on the April 13, 2020 phone call if he wanted to cancel the order. The Defendants argue that Vita was only expressing his belief that the order could be cancelled, and not that the order could actually be cancelled. However, viewing Vita's memo and testimony in the light most favorable to the Plaintiffs and drawing all reasonable inferences from that evidence in their favor, as the Court must on summary judgment, the undersigned finds that evidence sufficient to create a genuine issue of material fact as to whether Forde was aware that the order could be cancelled at the time he told Agoglia on April 14, 2020, that it could not.

opening brief fails to meet that burden with regard to their argument that both claim preclusion and collateral estoppel bar the Plaintiffs' Count One conversion claims against Tonya Forde and CKC, and the undersigned declines to consider the Defendants' arguments on the issue raised for the first time in their reply brief.

In Alabama, the " 'party identity criterion of [traditional] *res judicata* does not require complete identity, but only that the party against whom *res judicata* is asserted was either a party or in privity with a party to the prior action or that the non-party's interests were adequately represented by a party in the prior suit, and the relationship between the party and non-party is not so attenuated as to violate due process.' " *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 725–26 (Ala. 1990) (alteration added) (quoting *Whisman v. Ala. Power Co.*, 512 So. 2d 78, 82 (Ala. 1987) (citations omitted)). Similarly, while an element of collateral estoppel is that the two suits involved "the same parties," that "requirement is not strictly enforced if the party raising the defense of collateral estoppel, or the party against whom it is asserted, is in privity with a party to the prior action." *Id.* at 726. "The test for determining if two parties are in privity focuses on identity of interest." *Id.*

There is no dispute that neither Tonya Forde nor CKC was a party to the 2020 Action; therefore, they are required to show that they were "in privity" with Steve Forde in the 2020 Action, under Alabama law, to show entitlement to res judicata on Count One. However, as was noted previously, *see* n.3, *supra*, the Defendants incorrectly argued for the application of federal res judicata law—including for determining privity (*see* Doc# 20-1, PageID.193)—in their opening brief supporting

19

summary judgment. And unlike the test for comparing the claims in two cases for the purposes of claim preclusion, which are substantively the same under both federal and Alabama law, *see* n.3, *supra*, the Eleventh Circuit has recognized that the tests for determining non-party privity for purposes of res judicata under Alabama and federal law "are *not* substantively the same…" *See Sellers*, 968 F.3d at 1273-75 (emphasis added). Moreover, the only state law the Defendants cite in their opening brief in support of privity is a Tennessee case, *In re Estate of Fletcher*, 538 S.W.3d 444 (Tenn. 2017), for the proposition that "[a] joint bank account held by husband and wife is presumed to be a tenancy by the entirety absent proof to the contrary." 538 S.W.3d at 449. However, the Defendants fail to offer any explanation as to how that holding is relevant to the issue of privity under Alabama law, and nothing in the decision itself makes any such relevance apparent. Aside from not being issued by an Alabama court or involving application of Alabama law, *Estate of Fletcher* did not concern issues of res judicata or privity at all—indeed, nowhere in that decision do the terms "res judicata," "collateral estoppel," "privity," etc. even appear.

Neither the Court nor the party opposing summary judgment bears the burden of correcting a summary judgment movant's misapplication of law and making the movant's case for it under the correct standard. While the Defendants offer a more robust application of Alabama law on the issue of privity in their reply brief, its argument under the correct standard comes too late. Raising arguments for the first time in a reply brief is highly disfavored and generally results in waiver or forfeiture of those arguments. *E.g.*, *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th

Cir. 2005); *Ceccanti v. Thomas*, No. 1:21-CV-195-TFM-MU, 2023 WL 4317649, at *7 (S.D. Ala. May 9, 2023) (Moorer, J.). District courts enforce the rule against considering arguments raised for the first time in reply briefs in " 'order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to saved his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them…' " *Ceccanti*, 2023 WL 4317649, at *7 (quoting *N.H. Ins. Co. v. Wiregrass Constr. Co.*, No. 09-0489-WS-B, 2011 WL 206191, at *2 n.2 (S.D. Ala. Jan. 20, 2011) (Steele, J.)).

The prejudice to the Plaintiffs here is particularly acute since the late-raised arguments concern privity with respect to res judicata under Alabama law, an issue in which the "term 'privity' has not been uniformly defined" except "[l]argely…by example," and which Alabama courts "seem to resolve…on an ad hoc basis in which the circumstances determine whether a person should be bound by or entitled to the benefits of a judgment." *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988) (quotations omitted). *Accord Sellers*, 968 F.3d at 1274. Neither side has cited on-point Alabama case law compelling a conclusion one way or the other on the issue of privity here. Therefore, it was incumbent upon the Defendants, as the parties bearing the burden to show entitlement to both summary judgment in general and res judicata more specifically, to properly argue the privity issue under Alabama law in their opening brief, so that the Defendants would have a full and fair opportunity to address and

rebut those arguments and supporting authorities. The fact that the Plaintiffs recognized the Defendants' error of law and presented argument on the privity issue under the correct law in their response does not sufficiently mitigate the prejudice the Defendants' failure to do so, given the "ad hoc" and circumstance-specific analysis involved on the issue.

For this reason, the Defendants' motion for summary judgment is due to be denied to the extent Tonya Forde and CKC claim entitlement to res judicata on any claim or issue.

## B. Merits of Unjust Enrichment and Money Had and Received Claims

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008).[6] Tonya Forde argues she is due summary judgment on Harrison's Count Two unjust enrichment clam against her because he can present "no evidence that T. Forde knowingly accepted any benefit from Harrison." (Doc# 20-1, PageID.208).[7] The undersigned agrees.

---

[6] All parties agree that Alabama substantive law governs the Plaintiffs' claims in this diversity action. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) ("Under our precedents, a party waives its opportunity to rely on non-forum law where it fails to timely provide—typically in its complaint or the first motion or response when choice-of-law matters—the sources of non-forum law on which it seeks to rely."); *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("[B]ecause the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum…controls.").

[7] The Defendants' brief in support of the present motion expressly only argues for summary judgment in favor of Tonya Forde and against Harrison on this issue. (*See* Doc# 20-1, PageID.208 ("[T]here is no evidence that T. Forde knowingly accepted any benefit

In opposing this argument, the Plaintiffs assert:

> This argument is unserious; while T. Forde testified that she was blissfully unaware of anything in her bank accounts, the evidence shows otherwise. (1) She was a co-owner of the account and used it to receive child support payments; (2) millions of dollars in mask money were wired to this account; (3) $172,600 was used to pay off the consent judgment that she entered into for her own personal debt to American Express (and on which she had been making periodic payments for 9 months) were sent to a law firm from the account she co-owned; (4) $385,000 was transferred from an account she co-owned to her company's account, which she solely owned; and (5) those funds were used to purchase real estate for her company.

(Doc# 23, PageID.261). However, even assuming this evidence supports a finding that Tonya Forde "knowingly accepted and retained a benefit," none of it indicates that she was aware that this benefit was "provided by" Harrison, or that Harrison had "a reasonable expectation of compensation." On the other hand, Tonya Forde has presented her deposition testimony taken during the 2020 Action stating (1) that "at no time w[as she] ever a partner to [he]r knowledge or ha[d] any involvement in [Steve Forde's] businesses" (Doc# 20-2, PageID.218); (2) that she was aware that Steve Forde "at some point was or is involved in a business that sources masks" but "really didn't know much about the business or the masks" (*id.*); and (3) that she "had

---

from Harrison. The undisputed evidence shows that S. Forde, not T. Forde, paid the money to satisfy the judgment and paid the money to CKC. T. Forde had no knowledge of S. Forde's business dealings with Plaintiffs nor of the source of the funds in the joint account. As such, Plaintiffs cannot present substantial evidence that T. Forde knowingly accepted and retained a benefit from Harrison. Matador Holdings, Inc., 77 So. 3d at 145 (Ala. 2011) ('a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit'). Consequently, Harrison's equitable claims against her fail as a matter of law.")). Thus, the undersigned does not herein address Harrison's unjust enrichment claims against CKC, or Cathexis's unjust enrichment claims against either Tonya Forde or CKC.

no involvement in any of the deals with Helanbak" or even know what it was, did not know Agoglia or Harrison, and had no knowledge of any agreements between Steve Forde and any of those three (*id.*, PageID.219). Tonya Forde's testimony that she was unaware of the specifics of Steve Forde's mask-sourcing business and did not know of Harrison or his involvement in that venture, uncontroverted by any evidence from the Plaintiffs, establishes that there is no genuine issue of material fact that she was unaware either that the money in her joint bank account with Steve Forde was ""provided by" Harrison, or that Harrison had "a reasonable expectation of compensation." Thus, Tonya Forde is entitled to judgment as a matter of law on Harrison's unjust enrichment claim against her.[8]

Finally, Tonya Forde and CKC argue that they are due summary judgment on Harrison's claim for money had and received because "there also is no evidence that any mistake in payment was made to T. Forde and/or CKC." (Doc# 20-1, PageID.208). However, a mistake in payment is not the only way to prove such a claim. 'The essence of [a claim for] money had and received is that facts can be proved which show that

---

[8] The Plaintiffs weakly assert that, because Tonya Forde testified that Steve Forde " 'handled' her transactions for her[, s]uch creates a principal-agent relationship at a minimum, and knowledge of S. Forde as her agent is imputed to T. Forde as the principal." (Doc# 23, PageID.261). However, a principal is not presumed to know everything her agent knows about anything. Rather, "[a]n agent's knowledge can bind the principal if the agent acquired the knowledge while acting within the line and scope of his authority and the knowledge relates to the very matter coming within his authority." *Stone v. Mellon Mortg. Co.*, 771 So. 2d 451, 457 (Ala. 2000). There is no indication that Steve Forde's respirator mask deal with the Plaintiffs was "within the line and scope of his authority" as agent for Tonya Forde in handling her personal and business transactions. Moreover, "the mere fact of marital relationship does not make a wife the agent of her husband." *Goldfield v. Brewbaker Motors*, 36 Ala. App. 152, 155 (Ala. Ct. App. 1951).

[the] defendant holds money which in equity and good conscience belongs to the plaintiff or was improperly paid to the defendant because of mistake or fraud.' " *Johnson v. Life Ins. Co. of Ala.*, 581 So. 2d 438, 443 (Ala. 1991). The present motion for summary judgment does not argue that Harrison is unable to prove either improper payment due to fraud, or that Tonya Forde and/or CKC hold money which in equity and good conscience belongs to him. [9] Thus, they have not shown entitlement to judgment as a matter of law on this claim.[10]

---

[9] For what it's worth, Count Three of the operative complaint expressly invokes the "equity and good conscience" method of showing money had and received, and does not invoke the "mistake" method. (Doc# 1-1 ¶ 60, PageID.44).

[10]     In their reply, the Defendants claim that the "Plaintiffs failed to address T. Forde's argument that absent any evidence of wrongful conduct by her, Plaintiffs cannot prove their claim for conversion as a matter of law because the bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal user or misuser, is not conversion." (Doc# 27, PageID.735). However, that argument as raised in the Defendants' initial motion was dependent on a corollary argument that the Plaintiffs were collaterally estopped from relitigating certain issues. (*See* Doc# 20-1, PageID.205-206). As has been determined, neither Tonya Forde nor CKC has shown entitlement to assert collateral estoppel in this action.

    The Defendants have also argued, in a perfunctory manner, that the Plaintiffs' conversion claims fail because the money allegedly converted was commingled with other funds in two personal bank accounts. *See SouthTrust Bank v. Done*ly, 925 So. 2d 934, 940 (Ala. 2005) ("an action alleging conversion of money lies only where there is an obligation to deliver the specific pieces of the money in question or money that has been specifically sequestered, rather than a mere obligation to deliver a certain sum" (quotation omitted)). First, this argument appears to depend, at least in part, on the application of collateral estoppel, to which Tonya Forde and CKC have not shown entitlement. Moreover, to support the factual assertions underpinning this argument, the Defendants cite, in both their initial and reply briefs, to "[Doc. 49, PID 420, ¶ 28]." (See Doc# 20-1, PageID.206; Doc# 27, PageID.735). However, as of now (and certainly as of when the Defendants filed both of their summary judgment briefs); there is no "Doc. 49" in this action, and PageID.420 in this action links to an exhibit filed by the Plaintiffs in response to the present motion (and therefore did not exist for the Defendants to cite in the present motion).

    "Doc. 49, PageID.420, ¶ 28" in the 2020 Action refers to a paragraph in a brief submitted by Harrison in response to a motion for summary judgment filed by Forde in

### V.    *Conclusion*

In accordance with the foregoing analysis, the Defendants' "Motion for Summary Judgment" filed November 22, 2024 (Doc# 20), is **GRANTED in part** and **DENIED in part**, as follows:

1.  It is **GRANTED** as to Count Four, and as to Harrison's claim against Tonya Ford in Count Three; and

2.  It is otherwise **DENIED**.

**DONE** and **ORDERED** this the **29th** day of **September 2025**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

that action on January 20, 2022. That paragraph states: "The wire from Cathexis for $6,660,000 was received by Forde into his personal Pinnacle Bank account ending in x4599 on April 9." However, "a sentence in an unsworn brief is not evidence." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013). While the statement is followed by citations to two exhibits submitted with that summary judgment response, those exhibits collectively consist of hundreds of pages of deposition testimony and accompanying exhibits, and the citations do not provide pin cites to the specific pages that support the statement.

In short, the Defendants have failed to adequately identify record evidence supporting their commingling argument, which itself was raised in a perfunctory manner and appears to rely to some degree on application of collateral estoppel, to which Tonya Forde and CKC have not shown entitlement. Thus, they have failed to show entitlement to summary judgment on this issue.

To the extent the present motion raises any arguments not expressly addressed herein, they are summarily rejected.

26